**TEXAS PIPE LINE CO. v. UNITED STATES,**
and three other cases.

Nos. K–368 to K–376.

Court of Claims.
May 31, 1932.

Harry T. Klein and James J. Cosgrove, both of New York City, for plaintiffs.

B. B. Gilman, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (George H. Foster, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

The amortization deductions claimed in these cases are by the Texas Pipe Line Company, a Texas corporation, and the Texas Pipe Line Company of Oklahoma, an Oklahoma corporation, on pipe line facilities acquired by these corporations upon organization on July 1, 1917, and certain pipe line facilities thereafter constructed and installed by them. The pipe line properties acquired by these two corporations upon organization were paid in to them by the Texas Company in exchange for which the pipe line companies issued to the Texas Company their entire capital stock with the exception of qualifying shares and throughout the period from July 1, 1917, to December 31, 1918, the Texas Company owned all of the capital stock of the two pipe line corporations.

The controlling issue in the cases is whether the pipe line properties of the two pipe line corporations, the business of which was exclusively the transportation of oil from the oil wells of other corporations to the refineries of other corporations, were facilities constructed or acquired for the production of articles contributing to the prosecution of the war within the meaning of section 234 (a) (8) of the Revenue Act of 1918, 40 Stat. 1057, 1077, 1078.

The Commissioner held, and the defendant here insists, that these pipe line companies, being common carriers, were not producing articles for the prosecution of the war within the meaning of the statute and the regulations; that the right to this deduction must be determined on the basis of the nature of the business engaged in by the pipe line companies and the purpose for which the facilities were acquired, constructed, and used by the taxpayer claiming the deduction.

The plaintiffs' pipe line companies contend that the amortization deduction provided in the statute is properly allowable on facilities of a pipe line company, a member of a consolidated group, engaged in the production of petroleum products where all the stock of the pipe line companies is owned by the parent company and such facilities are operated as a plant facility of the consolidated group; that the properties of the Texas Pipe Line Company and the Texas Pipe Line Company of Oklahoma on which amortization deductions are claimed in this suit were acquired or installed by the members of a consolidated group during the war period, and were used for the production of war articles.

During the war period the Texas Company was engaged in the production of petroleum and its products, which were articles contributing to the prosecution of the war. This corporation owned, operated, and maintained oil wells and refineries, and, until July 1, 1917, owned and operated as a part of its business certain pipe line facilities for conveying crude petroleum from the wells to its refineries.

In February, 1917, the Legislature of the state of Texas, by enactment of chapter 30 of the General Laws of Texas, 1917, declared oil pipe line companies to be common carriers, and placed them under the jurisdiction of the Railroad Commission of the state.

By the provisions of chapter 31 of the General Laws of Texas 1917, the Legislature required all Texas corporations owning or operating oil pipe lines separately to incorporate such pipe lines, and, in the case of ownership of oil pipe lines beyond the border of Texas, authorized additional pipe line corporations to be organized outside of the state and the transfer of such pipe line properties to them. In every such case the statute permitted the oil-producing companies to acquire and own all of the capital stock of the separate pipe line corporations.

July 1, 1917, the Texas Company conveyed to the Texas Pipe Line Company and the Texas Pipe Line Company of Oklahoma all of its pipe line properties then owned in the states of Texas and Louisiana, and, on the same date, conveyed to the Texas Pipe Line Company of Oklahoma all of its pipe line properties then owned in the state of Oklahoma. These transfers were due to the Texas statute above mentioned declaring all pipe line companies to be common carriers and requiring that such companies be separately incorporated.

The pipe line properties with respect to which amortization is claimed were constructed by the Texas Pipe Line Company and the Texas Pipe Line Company of Oklahoma after July 1, 1917. As common carriers, these corporations were required to and did offer their services to the public for the transportation of oil at prescribed shipping rates; 98 per cent. of the oils transported by these pipe line companies was for the Texas Company. The Texas Company owned all of the capital stock of the two pipe line companies, and these corporations were therefore affiliated within the meaning of section 240 of the Revenue Act of 1918 (40 Stat. 1081). In 1919 the Texas Company prepared and filed a consolidated income and profits tax return for 1918 for itself and the Texas Pipe Line Company and the Texas Pipe Line Company of Oklahoma, affiliated companies. A deduction for amortization of war facilities was shown. The commissioner allowed an amortization deduction to the Texas Company for pipe line properties constructed and owned by it up to July 1, 1917, but denied the deduction for amortization of any of the properties owned by the two pipe line corporations after that date, on the ground that the cost of acquisition and the cost of construction of the pipe lines were borne by the Texas Pipe Line Company and the Texas Pipe Line Company of Oklahoma, transportation corporations, not entitled under the statute to such a deduction.

Section 234 (a) (8), supra, provides that: "In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer. * * *" A similar provision is found in section 234 (a) (8) of the Revenue Act of 1921, 42 Stat. 227, 255. Article 183 of Regulations 62 (1922 edition), promulgated February 15, 1922, under the provisions of the Revenue Act of 1921, provides as follows:

"Art. 183. *Property Cost of Which May be Amortized.*—The taxpayer may deduct from gross income a reasonable allowance for amortization of the cost of buildings, machinery, equipment, or other facilities, con-

structed, erected, installed, or acquired on or after April 6, 1917, for the production of articles contributing to the prosecution of the war against the German Government, and of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of such war.

"The allowance may be deducted only by taxpayers who after April 6, 1917, have constructed or otherwise acquired plant or other facilities for the actual production of articles contributing to the prosecution of the war. It is not sufficient, to entitle the taxpayer to the allowance, that the nature of his business is such as to contribute to the production of articles. For example, a taxpayer, such as a railroad, whose business activities are confined to transportation (other than water transportation) is not entitled to the allowance. A taxpayer, the nature of whose business is the actual production of articles, however, may claim the allowance with respect to the cost of all buildings, machinery, equipment, or other facilities which were constructed for use or which were used in connection with the production of such articles, both in the acquisition and transportation of raw material, the actual process of manufacture or other conversion, and the transportation and marketing of the finished product."

The Treasury Department has consistently held, and we think correctly, that a taxpayer whose business activities are confined to transportation, other than transportation by water, of articles or men contributing to the prosecution of the war, is not entitled to the amortization allowance provided in the statute. The department has also consistently held, as provided in the regulations, that a particular taxpayer, the nature of whose business is the actual production of articles contributing to the prosecution of the war, may claim an allowance with respect to the cost of all buildings, machinery, equipment, or other facilities which were constructed for use or which were used in connection with the production of such articles, both in the acquisition and transportation of raw material, the actual process of manufacture or other conversion, and the transportation and marketing of the finished product.

 The question before the court in these cases does not fall within the last-mentioned rule provided in the regulations and followed by the Treasury Department, inasmuch as we are here dealing with separate and distinct corporations. The Texas Company was engaged in the production of articles contributing to the prosecution of the war, but the transportation of crude oil from which those articles were manufactured through the facilities, upon which amortization is here claimed, was not made by the Texas Company and was not a part of its business; such transportation was carried on by the pipe line companies, separate and distinct taxpayer corporations. Under the Texas statutes, the pipe line companies were common carriers engaged in the business of transporting for profit such articles as should be entrusted to them by the public. Their income was derived from charges on transportation of oil; they did not sell or produce any article; they carried raw material, and delivered the same to the consignee in the same natural state in which received from the shipper. For the purpose of the deduction provided in the statute, their activities were in no wise different from those of a railroad company. In Hampton & L. F. Ry. Co. v. Noel (D. C.) 300 F. 438, a railroad company enlarged its facilities to provide service during the war for the Langley Field aviation station and engaged in the transportation of articles for the prosecution of the war. It sought a deduction for amortization of war facilities in its return for the year 1918. The claim was disallowed by the Commissioner, and this action was upheld by the court. The court pointed out that the statute clearly did not intend to permit land transportation companies to take such a deduction. The reasoning of the court and the decision denying deduction are applicable to the question involved in these cases. See, also, L. O. 1074, V-C. B. 159. But the plaintiffs in this case contend that the amortization deduction provided in the statute is allowable to the pipe line companies, because they were members of a consolidated group of corporations, one of which consolidated group, i. e., the Texas Company, was engaged in the production of petroleum products which were articles contributing to the prosecution of the war. The fact that a particular taxpayer whose business is in no wise the production of articles is affiliated with another corporate taxpayer which is engaged in the production of articles contributing to the prosecution of the war does not alone bring the first corporation within the provisions of section 234 (a) (8). Affiliation does not destroy the corporate entity nor change the separate identity of each member of the affiliated group. The consolidated group of corporations is not the taxpayer. The fact that one member of the

860

consolidated group may be entitled to a certain deduction under the statute does not give the other members of the affiliated group the right to claim such deduction if, as separate and distinct taxpayers under the statute, they are not entitled to it.

Items of gross income and deductions are not consolidated for the purpose of determining the net income and the tax. It is only the net income of the separate corporate taxpayers, members of the affiliated group, that is consolidated and treated as the consolidated net income for the purpose of computing the tax to be allocated and assessed to the several corporations in accordance with the net income properly assignable to each. Swift v. United States, 67 Ct. Cl. 322. The consolidated group, therefore, may only receive the benefit of the deduction for amortization of the facilities in question if the pipe line companies individually and as separate corporate taxpayers are entitled under the statute to the deductions. As such separate taxpayers, and independently of the business carried on by the Texas Company, the pipe line companies did not come within the provisions of section 234 (a) (8), and were not entitled to a deduction for amortization of their properties. The ownership of their stock by the Texas Company, which, as a separate and distinct taxpayer corporation, was entitled to the amortization deduction on its facilities, does not change the situation. First National Bank of Chicago v. United States, 38 F. (2d) 925, 69 Ct. Cl. 312; Id., 283 U. S. 142, 51 S. Ct. 378, 75 L. Ed. 913. The properties and facilities upon which the deduction for amortization is claimed were purchased or installed by the pipe line companies. The costs of acquisition and construction of pipe line facilities were the costs of the pipe line companies. The statute allows the deduction for amortization only to the corporations bearing the cost of acquisition or construction, which, in this case, were the pipe line companies. Appeal of Military Equipment Co., 2 B. T. A. 36.

We have considered the cases of Appeal of G. M. Standifer Construction Corp., 4 B. T. A. 525, and United States Refractories Corp., 9 B. T. A. 671, relied upon by plaintiffs, but the facts and circumstances in the cases before this court distinguish them from the cases mentioned before the United States Board of Tax Appeals.

The plaintiffs are not entitled to recover, and the petitions are therefore dismissed. It is so ordered.