JAMES MCCUTCHEON & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49167. Promulgated July 13, 1934.

*Ross M. Bacon, Esq.*, for the petitioner.
*Harry Morton, Esq.*, for the respondent.

### OPINION.

TRAMMELL: This proceeding is for the redetermination of a deficiency in income tax of $713.28 for the fiscal year ended August 31, 1928. Matters presented for determination are (1) whether the difference between cost and selling price of certain shares of stock in the petitioner which were sold by petitioner's subsidiary during the period of affiliation constituted taxable income and should be included as such in a consolidated return filed by the petitioner and its affiliates, and (2) in the event the foregoing issue is decided adversely to the petitioner, then whether the sale constituted an installment sale.

The petitioner is a New York corporation, with its principal office in New York City. In 1921 it organized the McCutcheon Securities Corporation, hereinafter referred to as the Securities Corporation, in order that that corporation might buy at book value pro rata from the stockholders of the petitioner a percentage of their stock in the petitioner and sell it at book value only to key employees of the petitioner as a means of increasing the interest of these men in the petitioner by making them part owners, and buy the stock back at book value at any time an employee left his position with the petitioner.

The certificate of incorporation of the Securities Corporation authorized it, among other things, to deal in stocks and bonds.

Since the incorporation of the Securities Corporation in 1921 the petitioner has owned all of its issued capital stock. The McCutcheon

Realty Corporation, hereinafter referred to as the Realty Corporation, was organized in 1924 and since that time the Securities Corporation has owned all of its capital stock. For the fiscal year ended August 31, 1928, the petitioner and the foregoing corporations were entitled to and did file a consolidated income tax return.

On July 21, 1921, the Securities Corporation purchased pro rata from the stockholders of the petitioner 500 shares of common stock and 500 shares of the first preferred stock in the petitioner for $122,782.54. On the same date the Securities Corporation sold to employees of the petitioner at cost 350 shares of each class of the stock. On February 23, 1923, the corporation sold to employees of the petitioner at cost the remaining 150 shares of each class of stock. When their employment with the petitioner terminated the corporation repurchased from some of the above employees shares of stock as follows for the amounts indicated:

| Date of purchase | Shares of each class of stock purchased | Amount |
|---|---|---|
| Dec. 21, 1922 | 20 | $4,911.30 |
| Nov. 9, 1922 | 50 | 12,278.25 |
| July 2, 1924 | 25 | 6,416.93 |
| Do | 25 | 6,416.93 |
| Nov. 10, 1926 | 25 | 7,759.25 |
| Total | 145 | 37,782.66 |

On February 29, 1928, the Securities Corporation sold to the following named employees of the petitioner shares of stock as follows for the amounts indicated:

| Employee | Shares of each class of stock sold | Amount |
|---|---|---|
| Wallace Speers | 25 | $7,641.50 |
| John G. McCutcheon | 20 | 6,113.20 |
| Thomas F. Meagher | 100 | 30,566.00 |
| Total | 145 | 44,320.70 |

The above described transactions constituted the only purchases and sales of stock in the petitioner made by the Securities Corporation from the time of its organization until the close of the fiscal year ended August 31, 1928.

The foregoing transactions did not affect the affiliation existing between the petitioner and the Securities Corporation and that existing between the Securities Corporation and the Realty Corporation, since the petitioner still owned and continued to own during the entire fiscal year ended August 31, 1928, all of the outstanding

capital stock of the Securities Corporation and the Securities Corporation owned during the entire fiscal year all of the outstanding capital stock of the Realty Corporation.

The contracts under which the Securities Corporation sold stock to the employees of the petitioner on February 29, 1928, provided in part as follows:

That the Designee shall pay to the Corporation the stipulated price aforesaid, of which none has been paid, on or before October 21, 1932 with interest thereon at the rate of six (6) per centum per annum, and the certificates representing said shares, * * * issued in the name of and duly indorsed by the Designee, have been and hereby are deposited with the Corporation as collateral security for the payment in full of such sum of * * * and the interest thereon; that until the full payment of said sum and interest, the dividends paid on all of said shares shall be paid to and received by the corporation and by it applied in liquidation of said stipulated price.

Under date of February 29, 1928, the accounts on the books of the Securities Corporation of the purchasers of stock on that date were charged with the purchase price of the shares of stock purchased by them. Thereafter these accounts were charged with the amounts of interest due thereon and credited with amounts of dividends paid on the stock purchased by them. On August 1, 1932, the interest that had accrued on the purchase price was in excess of the dividends that had been paid on the stock and as a consequence all of the purchasers, except one who had made some cash payments in 1928 and in 1929, were indebted to the Securities Corporation in greater amounts than at the time they purchased the stock. The Securities Corporation still holds as security for the indebtedness of the purchasers the shares of stock it sold them.

The consolidated income tax return of the petitioner, the Securities Corporation, and the Realty Corporation filed for the fiscal year ended August 31, 1928, showed a taxable net income of $207,357.98, on which a tax of $25,919.75 has been paid.

In determining the deficiency here involved the respondent increased the taxable income shown on the consolidated return by the amount of $6,538.04 representing the difference between the cost of $37,782.66 to the Securities Corporation of the 145 shares of common stock in the petitioner and the 145 shares of first preferred stock in the petitioner and the price of $44,320.70 at which it sold such stock to the employees of the petitioner in February 1928.

The petitioner contends that the amount of $6,538.04 by which the respondent increased the consolidated income does not constitute taxable income, since the sales from which the amount resulted were of stock in a member of an affiliated group by another member of the group during the period of affiliation. The respondent contends that if a separate return had been filed by the Securities Corpora-

tion it would have had to include the profit from the sales in its taxable income, and, since the provisions of the law authorizing the filing of consolidated returns does not purport to modify or change the method of computing the income of the various corporations for which a consolidated return is filed, the amount in controversy constituted taxable income of the Securities Corporation and was properly included by him as a part of the consolidated income of the group.

In support of its position the petitioner relies on our decision in *John Scowcroft & Sons Co.*, 18 B.T.A. 532, wherein we held, upon authority of our prior decisions, that where two corporations are affiliated the consolidated net income is to be computed as for one corporation and the sale by one of such corporations of some of its stockholdings in the other, affiliation continuing, should be treated, for the purpose of the income tax, as a sale by the affiliated group of its capital stock and as a capital transaction, giving rise to neither a taxable gain nor a deductible loss. We reached that conclusion on the theory that affiliated corporations filing a consolidated return were, for the purpose of the tax, one and the same taxpayer and that the sale was a capital transaction which could not give rise to taxable gain or deductible loss irrespective of whether the sale of the stock was to an outsider or not. In *Van Camp Packing Co.*, 26 B.T.A. 256, we reached the same conclusion as in the *Scowcroft* case and upon the same basis. The decision in the *Van Camp* case was reversed, upon appeal, 67 Fed. (2d) 596, the court quoting from *Woolford Realty Co.* v. *Rose*, 286 U.S. 319, and *Commissioner* v. *Ben Ginsburg Co.*, 54 Fed. (2d) 238. In the *Woolford Realty Co.* case the Supreme Court said:

The fact is not to be ignored that each of two or more corporations joining (under §240) in a consolidated return is none the less a taxpayer. *Commissioner* v. *Ginsburg Co.*, 54 F. (2d) 238, 239. By the express terms of the statute (§240b) the tax when computed is to be assessed, in the absence of agreement to the contrary, upon the respective affiliated corporations "on the basis of the net income properly assignable to each." "The term 'taxpayer' means any person subject to a tax imposed by this Act." Revenue Act of 1922, §2a(9). A corporation does not cease to be such a person by affiliating with another.

In the *Ginsburg* case the court said:

Even though both corporations were affiliated in 1927, they each remained taxpayers, and their affiliation merely made them a tax computing unit, *Swift & Co.* v. *United States* (Ct. Cl.) 38 F. (2d) 365, 379; *Sweets Co.* v. *Commissioner*, 40 F. (2d) 436 (C.C.A. 2). * * * But a corporation of the affiliated group remains a taxpayer, and the deduction must be confined to the computation of the net income of the corporate entity. * * * And we said in *Sweets Co.* v. *Commissioner*, *supra*, that the statutory provisions for consolidated returns declared merely a method of computing the taxes of the corporation members of the group. It is section 240 (a) which authorized

the net income of the affiliated group to be made up while computing the net income and losses of the several corporations and then consolidating the results of the several computations, thereby adding net income to net income and net loss to net loss and arriving at the taxable income by subtracting the composite net loss from the total net income.

Inasmuch as under the more recent decisions, as indicated above, affiliated corporations filing a consolidated return are not to be treated as one and the same taxpayer, but as taxpayers retaining their separate identities, and as not all dealings by a corporation in its capital stock are to be considered purely as capital transactions resulting in neither taxable gain nor deductible loss, it appears that the basis upon which our decisions in the *Scowcroft* and *Van Camp* cases were reached can not be sustained. Accordingly, the *Scowcroft* case relied on by the petitioner can no longer be considered as authority for its contention.

Here the Securities Corporation, the subsidiary, purchased from stockholders and employees or former employees of the petitioner certain shares of stock in the petitioner which it subsequently sold for an amount greater than it had paid for such stock. In view of the fact that the two corporations were separate taxpayers, we are of the opinion that the gain from the transactions constituted taxable income of the Securities Corporation and properly is to be included as a part of the taxable consolidated income. The action of the respondent is therefore sustained.

The petitioner urges that, in the event we hold that the income from the sales is taxable, then it is to be reported on the installment basis instead of the full amount to be included in the income of the taxable year. Since we have held that the income from the sales is taxable, it becomes necessary to consider this contention of the petitioner.

The contracts under which the Securities Corporation sold the stock in 1928 provided for the payment for such stock " on or before October 21, 1932 with interest thereon at the rate of six (6) per centum per annum." They further provided that until the payment in full of the purchase price of the stock and the interest thereon " the dividends paid on all of said shares shall be paid to and received by the Corporation and by it applied in liquidation " of the purchase price. During the years 1928 and 1929 the amounts of the dividends paid on the shares of stock exceeded the amount of the interest accruing on the purchase price, but beginning in 1930 the situation was reversed. Dividends paid on the stock from the time of its sale in the early part of 1928 down to August 31 of that year, the close of the petitioner's taxable year, amounted to $1,740, which the petitioner contends constituted the initial payments. The petitioner contends that of the profit on the sales, $6,538.04, only

1740/44,320.70, or $256.68, represented taxable income on the installment basis. The respondent denies that the petitioner is entitled to report the profit on the installment basis.

Under the contracts of sale the only fixed date of payment for the stock was October 21, 1932. While under the contracts dividends paid in the meantime on the stock were to be received by the Securities Corporation and applied by it against the purchase price, the provision was contingent upon the declaration and payment of dividends. The contracts contained no statement respecting either the amounts or dates of payment of dividends. If no dividends had been declared and paid by the petitioner no payments were required to be made to the Securities Corporation. The sole unconditional obligation contained in the contracts respecting payment of the purchase price was that it be paid on or before October 21, 1932.

In *Thomas F. Prendergast, Executor*, 22 B.T.A. 1259, we considered the question as to the meaning of the word " installment " and reached the conclusion that where only one single payment was provided for in the sales agreement the transaction was not an installment sale. Here the payment of only one definite sum of money, the purchase price, and only one fixed date upon which it was to be paid were specifically and unconditionally provided for. All else was contingent. Under these circumstances we are not able to find that the sales constituted sales on the installment plan.

Reviewed by the Board.

*Judgment will be entered for the respondent.*